UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODOLFO ELIAS MAESTRE TORREGROZA (A-221-288-230),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY CORRECTIONAL FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-2668 DAD CSK<br><br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

Petitioner Rodolfo Elias Maestre Torregroza (A-221-288-230), a native and citizen of Colombia, who is proceeding without counsel, has filed a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Petitioner entered the United States on or about October 16, 2024.  On February 28, 2026, petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE").  This habeas action concerns petitioner's detention.

Pending before the Court is respondents' motion to dismiss.  (ECF No. 5.)  For the reasons that follow, the Court recommends that respondents' motion to dismiss be denied, the petition for writ of habeas corpus be granted and petitioner be immediately released.

///

///

---

[1]  This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

1

## I.      FACTUAL BACKGROUND[2]

Petitioner is a native and citizen of Colombia.  (ECF No. 1 at 37.)  On or about October 16, 2024, petitioner entered the United States.  (Id.)  Upon entering the United States, petitioner was neither admitted nor paroled after inspection by an immigration officer.  (Id.)  Petitioner's wife applied for asylum with petitioner and their minor son as dependents on her application.  (See id. at 22-26.)  On October 28, 2024, petitioner's wife was found to have a credible fear of persecution based on her testimony, which was found credible by the asylum officer, that petitioner was extorted by a clan with a threat to kill petitioner's wife and their child if petitioner did not pay.  (Id. at 24.)  After petitioner did not pay and he reported the extortion to law enforcement, petitioner's wife and son were kidnapped, petitioner's wife was raped in front of their son, and petitioner and her son were released after petitioner agreed to give a vehicle in exchange for their return.  (Id.)  Petitioner, his wife, and son fled Columbia.  (Id.)  Petitioner's wife's family-based asylum application is pending.  (See id. at 12.)  On October 30, 2024, petitioner was issued a Notice to Appear under INA Section 240 (8 U.S.C. § 1229a) removal proceedings, which are standard removal proceedings.[3]  (Id. at 37.)  In addition, the Notice to Appear does not allege petitioner is an "arriving alien," though the Notice does include a place to designate this information.  (Id.)  Following his entry into the United States, petitioner participated in the Intensive Supervision Appearance Program ("ISAP") and has followed all the reporting requirements and conditions.[4]  (Id. at 6, 12.)  On February 28, 2026, petitioner was detained by ICE.  (Id.)  Petitioner has not received a bond hearing, and has been in continuous detention since February 28, 2026.  (Id.)

Respondents do not contest petitioner's factual allegations.  (See ECF No. 5.)

---

[2]  Petitioner filed a verified habeas petition.  (ECF No. 1 at 8.)  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)).  Respondents do not contest petitioner's factual allegations.  (See ECF No. 5.)

[3]  Removal proceedings pursuant to 8 U.S.C. § 1229a (INA § 240) are standard removal proceedings, which are different from expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1) (INA § 235(b)(1)).

[4]  ISAP is an alternative to detention program administered by ICE.  See https://www.ice.gov/features/atd.

## II.   PROCEDURAL BACKGROUND

On April 9, 2026, petitioner filed his verified petition for writ of habeas corpus.  (ECF No. 1.)  On April 21, 2026, respondents filed a motion to dismiss.  (ECF No. 5.)  On April 28, 2026, this Court ordered respondents to serve the motion to dismiss on petitioner and file proof of service by 9:00 a.m. on April 29, 2026.  (ECF No. 6.)  On April 28, 2026, respondents filed proof of service of the motion to dismiss on petitioner.  (ECF No. 7.)  On April 28, 2026, petitioner filed a reply to the motion to dismiss.  (ECF No. 11.)

Petitioner filed a motion for extension of time to file the reply to the motion to dismiss on the grounds that he did not receive respondents' motion to dismiss.  (ECF No. 12.)  The motion for extension of time is signed by petitioner on April 24, 2026, though it was not filed until April 30, 2026.  (Id. at 12.)  Because petitioner received respondents' motion to dismiss, as reflected by petitioner's reply signed April 25, 2026, the motion for extension of time is denied as unnecessary.  Briefing is now complete.

## III.   LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV.   DISCUSSION

Generally, noncitizens are subject to civil immigration detention only if the noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690 (holding that

8 U.S.C. § 1231(a)(6) does not authorize indefinite detention). Petitioner challenges his continued detention based on the violation of the following:[5] (1) the Fifth Amendment procedural due process clause; and (2) the Fifth Amendment substantive due process clause. (ECF No. 1 at 6-7, 10.) Respondents do not argue that petitioner is a flight risk or a danger to the community and instead argue that as an "applicant for admission," petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2) and he is ineligible for a bond hearing. (ECF No. 5 at 1-2.) Respondents cite Avila v. Bondi, No. 25-3741, 2026 WL 819258 (8th Cir. Mar. 25, 2026) and Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026), in support of their position that § 1225(b)(2)(A) is applicable here. (Id.) Respondents also argue that petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (Id. at 2.) In the alternative, respondents request that the Court stay this matter pending resolution of Rodriguez v. Bostock, No. 25-6842 (9th Cir.). (Id.)

A.    Due Process Claims

Petitioner argues he has a fundamental liberty interest in freedom from imprisonment pursuant to the Fifth Amendment. (ECF No. 1 at 10.) Respondents argue petitioner's due process claims fail because petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress. (ECF No. 5 at 2.) Respondents' arguments do not demonstrate the government has satisfied the requirements of the Due Process Clause, "which of course constitute[s] the supreme law of the land[.]" Tot v. United States, 319 U.S. 463, 472 (1943) (Black, J., concurring).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is

---

[5] Because petitioner is proceeding pro se and pro se pleadings are liberally construed, the Court construes petitioner's claim as a Fifth Amendment due process claim challenging his detention, and not limited to a claim challenging his detention as prolonged. The Court also notes that respondents did not focus on prolonged detention in their response. (See ECF No. 5.)

lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See Young v. Harper, 520 U.S. 143, 147 (1997) (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context).

The Court finds that petitioner has a constitutionally protected liberty interest in remaining free from custody. Petitioner has lived in the United States for over 1 year and 4 months, during which time he participated in ISAP, following all reporting requirements and conditions. (ECF No. 1 at 12.) Petitioner's wife applied for asylum and was found to have a credible fear of persecution, and petitioner is a dependent on his wife's pending asylum application. (Id.) This is not a situation of a noncitizen who was unknown to government officials, but one who has followed procedures to seek and obtain immigration relief. This created a reasonable expectation in petitioner's continued release while his immigration applications were pending. See Perry v. Sindermann, 408 U.S. 593, 601-03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest).

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution. The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also

5

Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").  For over 1 year and 4 months, petitioner was free from custody before his detention.  During this time, petitioner participated in ISAP, following all reporting requirements and conditions. (ECF No. 1 at 12.)  Petitioner's spouse and young child depend on petitioner financially.  (Id.)  Petitioner also provides care for his child with special needs.  (Id. at 13.)  The duration of his time free from custody elevates and underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and interdependence" that "underscore the high stakes of [his] liberty.");  Ortega v. Bonnar, 415 F. Supp. 3d 963, 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

The second Mathews factor also weighs in petitioner's favor.  "The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing." See A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Again, civil immigration detention, which is "nonpunitive in purpose and effect[,]" is

typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.  See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).  Respondents do not dispute any of petitioner's facts and do not contend that petitioner is or was a flight risk or a danger to the community.  (See generally ECF No. 5.)  Here, petitioner has been detained since February 28, 2026 without being given an individualized bond hearing to evaluate whether petitioner is a flight risk or a danger to the community.  No neutral arbiter has determined whether petitioner is a flight risk or a danger to the community.

As to the third Mathews factor, this Court recognizes that the government has an interest in enforcing immigration laws, but respondents' interest in detaining petitioner without a hearing is "low."  Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. Mar. 3, 2025).  Detention hearings in immigration courts are routine, and impose a "minimal cost."  Doe, 787 F. Supp. 3d at 1094.  In addition, here, the government's interest is even lower because petitioner was previously allowed to participate in ISAP.

Overall, balancing these factors, the Court finds that the Mathews factors weigh in favor of finding petitioner is entitled to a bond hearing, and petitioner should have been provided such a hearing before he was detained.  "An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added).  In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a predeprivation hearing before their parole can be revoked.  Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention."  F.M.V., 2025 WL 3083934 at *6 (collecting cases).  Respondents point to no reasons a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process."  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036.  Accordingly, the Court finds that petitioner is also entitled to relief on his due

7

process claims.

## V.   RESPONDENTS' REQUEST TO STAY

Respondents' alternative request that this matter be stayed pending a ruling by the Ninth Circuit in <u>Rodriguez v. Bostock</u>, No. 25-6842 (9th Cir.) should be denied because a stay is not in the interests of petitioner, who has been detained since February 28, 2026, and because a stay would not promote the efficient use of scarce judicial resources in a district with some of the highest caseloads in the country.  A stay would put a further strain on limited judicial resources.

## VI.   RESPONDENTS' MOTION TO DISMISS

For the reasons set forth above, respondents' motion to dismiss should be denied.

## VII.   CONCLUSION

Accordingly, IT IS HEREBY ORDERED that petitioner's motion for an extension of time (ECF No. 12) is denied as unnecessary.

Further, IT IS HEREBY RECOMMENDED that:

1.   The petition for writ of habeas corpus (ECF No. 1) be GRANTED.

2.   Respondents' motion to dismiss (ECF No. 5) be DENIED.

3.   Respondents be ordered to IMMEDIATELY release petitioner Rodolfo Elias Maestre Torregroza (A-221-288-230) and be ordered to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release.

4.   Respondents be ENJOINED AND RESTRAINED from re-detaining petitioner unless the government demonstrates, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.  This injunction does not address other circumstances where detention authority is established under different authority than what is presented in this case (e.g., 8 U.S.C. § 1226(c) or 8 U.S.C. § 1231).

5.   Given petitioner's pro se status, respondents be directed to file, within **seven days** of

8

the adoption of these findings and recommendations, a status report addressing petitioner's status.

6.  The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **seven** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 8, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

Torr2668.imm.release/2

9